From E. E. Crumrine, Washington, Pa.

---

## Enders et al. v. Ohle.

*Equity — Injunction—Building restriction—Violation of building restrictions—Garage—Adjoining lot owners—Estoppel.*

1. A party who has violated a building restriction is estopped from maintaining a bill to restrain another lot owner in the same plan from a like violation of the same restriction.

2. Four instances of violation of a building restriction by owners of lots out of a total of eighty lots and of twenty-five garages, does not warrant respondent in determining for himself that the restriction has ceased to exist and that he is justified in violating it.

3. Mere failure of a lot owner to take steps to enjoin all violations of a building restriction is not a waiver of his right to prevent by injunction a violation upon property adjoining his own premises, and that he is not specifically injured is no reason for denying relief in equity.

4. A restriction reasonable, valid and enforceable in equity cannot be violated on the ground of inconvenience or impracticability.

Injunction. C. P. Allegheny Co., July T., 1924, No. 449.

*William B. Paul* and *Zehner & Allen*, for plaintiffs.

*Charles G. Lane, Jr.*, and *M. J. Hosack*, for defendant.

REID, J., Feb. 5, 1925.—This is a bill to enjoin respondent from building a garage on his lot in Highfield Plan of Ben Avon Heights, in this county, in violation of the terms of a building restriction which forbids the erection of garages or certain other structures, except entirely within a space measured toward the street fifty feet from the rear line of each lot.

After the garage had partially been completed, respondent was restrained by a preliminary injunction, later continued until final hearing.

Hugo Enders originally was one of the complainants. It developed at the hearing to continue the injunction that he himself had violated the restriction in question. The chancellor then sitting held that he had estopped himself thereby from complaining of respondent's violation, but permitted the cause to proceed as to the other complainants, Southard and Faulkner.

It is admitted that respondent's incompleted garage is situated entirely outside of the limits prescribed for it by the terms of the restriction in ques-

tion. Its location is sought to be justified upon the ground of necessity, as that portion of respondent's lot lying between the rear line and another line drawn fifty feet from the latter, toward the front, is so steep as to render the placing of a garage there, if not impossible, at least impracticable.

### Findings of fact.

First. That Claude F. Southard is the equitable owner of lot numbered 64, G. R. Faulkner the owner of lots numbered 65 and 66, and the respondent, Clarence Ohle, the equitable owner of lot numbered 63, all situated upon the southerly side of Clovelly Road, Highfield Plan of Ben Avon Heights, Kilbuck Township, Allegheny County, Pennsylvania.

Second. That the lots above stated, as well as many others in said plan, were purchased by the owners with knowledge that they were subject to a building restriction, the terms of which are as follows: "That there shall not be erected or suffered or permitted to be erected more than one single dwelling-house and a suitable and well-kept garage, stable and chicken house appurtenant to said dwelling-house on each lot. That said dwelling-house shall not be erected nearer to the centre of the roadway than forty (40) feet and said garage, stable and chicken house shall be wholly located within fifty (50) feet of the rear line of said lot."

Said restriction is effective for twenty years from Aug. 1, 1910.

Third. That respondent has begun and partially completed a garage on his said lot, no part of which is located within a space of fifty feet measured from the rear line of the lot towards the front, but which is entirely outside of and beyond the area above indicated, being much nearer Clovelly Road than the terms of the restriction permit.

Fourth. Directly in the rear of the site upon which respondent sought to place his garage the surface of his lot descends at a very steep grade to the rear line. A garage placed there and built at the natural grade, within the space required by the terms of the restriction, would have been inaccessible and useless. One placed in the required area, directly in the rear of the present incompleted garage, and constructed to admit of a level and practicable approach from the front of the lot, would necessarily demand such high foundation or superstructure as to make the expense of construction burdensome and the resulting building perhaps dangerous.

Fifth. The only level or comparatively level site on respondent's lot on which a garage could be placed within the permitted limits is found in the rear of his dwelling-house. To reach such a garage it would be necessary to construct an expensive driveway diagonally across the property.

Sixth. There are about eighty lots in Highfield Plan, upon approximately thirty of which residences have been built and upon twenty-five of which garages have been built.

Seventh. In all the lots and garages above mentioned there have been violations of the building restrictions as to such garages in but four of the total number—these instances being the garage of one Butts, owner of lot No. 51; of one Cote, owner of lots Nos. 54 and part of 55; of Hugo Enders (originally one of the complainants), owner of lot No. 62, and the incompleted garage of the respondent, Clarence Ohle, owner of lot No. 63.

Eighth. Hugo Enders has ceased to be one of the complainants. He himself violated the restriction and could not be heard to complain of its violation by others. The remaining complainants, Claude F. Southard and G. R. Faulkner, did not violate the restriction or assent to or procure its violation by others. Said Southard objected to the construction of the Enders garage, but

Enders et al. *v.* Ohle.

said Faulkner did not participate in the effort to prevent its erection, as he was not at that time an owner.

### Conclusions of law.

First. The building restriction in question in this case is reasonable and valid, and respondent, having purchased his lot with notice both of the existence of said restriction and its provisions and of the physical conformation of his lot, is bound by the restriction.

Second. The fact that four instances of violation of the restriction, out of a total of eighty lots and of twenty-five garages, have occurred, did not warrant respondent in determining for himself that the restriction had ceased to exist and that he was justified in disregarding it.

Third. The erection of four garages in violation of the restriction is not a bar to the relief sought by said Faulkner and Southard.

Fourth. The mere failure by a lot owner to take steps to enjoin all violations of the restriction, even where his property is not injuriously affected, does not waive his right to prevent by injunction a violation of same upon property adjoining his own premises.

Fifth. That complainants Southard and Faulkner will not be specifically injured by the respondent's violation of the restriction is no reason for denying them relief in equity.

Sixth. Said complainants Southard and Faulkner have not estopped themselves by acquiescing in former violations of the restriction, and are, therefore, entitled to the relief they ask.

Seventh. That it will be a hardship upon the respondent to compel compliance with the terms of the restriction and that he may be deprived of the opportunity of maintaining a garage in the most convenient, accessible and economical site for his purposes cannot prevent a court of equity from enforcing the restriction.

Eighth. Refusal to enforce a covenant such as the building restriction in question here can be justified only upon clear and satisfactory proof that the violations of the restriction have been so serious, frequent and general as to warrant a chancellor's finding that there had been, in effect, an abandonment of its provisions.

Ninth. Complainants Southard and Faulkner are entitled to the relief prayed for.

### Discussion.

In our judgment, the preceding statement, findings of fact and conclusions of law cover the material points involved in this case so fully as to require but brief further consideration.

Both sides presented requests for findings of fact and conclusions of law and also filed exceptions to some of the requests.

In view of Amended Equity Rule No. 67, now effective, we have availed ourselves of the provisions which permit a chancellor to treat such requests as suggestions and to state his findings and conclusions in his own language. The requests and exceptions referred to are filed herewith, as required by the rule referred to.

We cannot assent to the propositions embraced in respondent's thirteenth request for findings of fact and his third for conclusions of law, which, in effect, would terminate the building restriction in question merely because the topography of respondent's lot renders it inconvenient or impracticable to comply with the terms of the restriction. If we could, we would be pleased to assist respondent in his difficulty, but we do not so understand the law.

Neither can we concede the proposition that the conveyance of title to respondent implied a right to erect a garage somewhere on the property other than on the site limited by the restriction if the owner should determine that the required location was either unsafe or impracticable. The answer to this proposition is that the purchaser, whose "eyes were his bargain," knew exactly what the topography of the lot was when he bought it, and if, notwithstanding the evident impracticability of the site for erecting a garage, he took title subject to the building restriction, he cannot therefore ignore the terms of the restriction on the ground either of inconvenience or impracticability.

The questions of abrogation of the restriction by reason of alleged extensive violations by other lot owners and of the estoppel of the complainants, Southard and Faulkner, have been considered in the findings and conclusions forming part of this opinion.

Those complainants are entitled to a decree *nisi*, enjoining the respondent from proceeding further in the attempt to construct the garage specified in the bill and to an order directing the removal by the respondent of the incompleted structure. Costs to be paid by respondent.

From William J. Aiken, Pittsburgh, Pa.